# EXHIBIT "2"

THIS AGREEMENT made as of June 15th, 1995 by and between Bob Marley Music, Inc., 8920 Sunset Boulevard, Los Angeles, California 90069 U.S.A. (hereinafter referred to as "Licensor") and Jurek International Graphics 712 Industrial Drive, Bensenville, IL 60106 (hereinafter referred to as "Licensee").

### WITNESSETH:

WHEREAS, Licensor controls the name, trademark, logo and visual representations of the Artist (as hereinafter defined); and WHEREAS, Licensee desires a license to utilize the Artist in connection with the manufacture, sale and distribution of articles hereinafter described; NOW THEREFORE, in consideration of the mutual promises herein contained, it is mutually agreed that the following words and/or expressions shall have meanings as laid out in our Schedule A unless the context otherwise requires.

1. **LICENSE**
    (a) Licensor grants to Licensee the Merchandising Rights, during the Term of this Agreement, to utilize the Artist solely in the Territory in the advertisement, promotion and distribution for ultimate sale through retail channels of the Product which shall be prepared and manufactured using designs supplied by Licensee and/or Licensor and subject to Licensor's approval as provided for in paragraph 4. hereof.
    (b) The license hereby granted extends only to the Product. Licensee shall not make or authorize any use, direct or indirect, of the Artist in connection with any other goods, materials or services.
    (c) Should Licensee directly or indirectly solicit orders for sale or distribution of the Product in any geographic area other than the Territory, the same shall constitute a material breach of this Agreement and Licensor shall have the right to forthwith terminate this Agreement upon ten days' prior written notice to Licensee.

2. **ROYALTIES AND FEES**
    (a) In consideration of the grant of the merchandising Rights herein, Licensee agrees to pay Licensor, as a royalty, the applicable sums set forth in Schedule A with respect to sales of licensed materials hereunder less only returns of up to ten percent (10%) of the total originally sold, but no deduction shall be made for cash or other discounts or credits, uncollectible accounts or any other discounts or credits (whether or not similar to the foregoing). No production, manufacturing, reproduction, selling, distribution or exploitation costs relating to the Product shall be deducted from the royalties payable to Licensor by Licensee. Licensee shall not be required to pay any royalty for free merchandise given away for advertising purposes (such as specimens to potential customers) provided that the number of such items so given away shall not exceed one (1%) of the total number of such items sold during the relevant accounting period.
    (b) Notwithstanding anything to the contrary contained herein, the royalties payable to Licensor hereunder during the term of this Agreement shall in no event be less than the Guarantee as referred to in Schedule A attached hereto.
    (c) Licensee shall furnish to Licensor within thirty (30) days following the end of each calendar quarter (each calendar quarter being 31st March, 30th June, 30th September and 31st December in each year of the Term) complete and accurate

computerized statements of account relating to all sales and distribution of the Product during the preceding calendar quarter, whether or not any sales or returns have taken place in such calendar quarter. Each such statement to be accompanied by Licensees remittance for all sums (if any) shown to be due. The receipt or acceptance by Licensor of any royalty checks hereunder) shall not preclude Licensor from questioning the correctness thereof at any time, and in the event that any inconsistencies or mistakes are discovered in such statements or payments, they shall be rectified immediately and the appropriate payment made to or credit awarded by Licensor. Should a mistake or inconsistency be discovered which results in a credit awarded to Licensee, such credit shall only be deducted from monies thereafter payable to Licensor hereunder, and shall not require the repayment of any sums theretofore received as royalties hereunder. All statements of account shall be accepted as conclusive after two years following the receipt by Licensor thereof, absent fraud.

(d) It is specifically agreed that late (by more than ten (10) days) or insufficient payments shall be deemed to constitute a default by Licensee hereunder, and if such late or insufficient payment is not cured within ten (10) days of Licensee's receipt of notice, this Agreement shall thereupon forthwith terminate. In such event, however, the balancof all guarantees then unpaid shall become due and payable immediately.

(e) Licensee agrees to keep accurate books of account and records covering all transactions relating to the sale or distribution of the Product, and Licensor or any duly authorized representative of Licensor, upon giving Licensee forty-eight (48) hours prior written notice, shall have the right at all reasonable business hours to an examination of said books of account and records of all other documents and material in the possession or under the control of Licensee with respect to the subject matter of this Agreement, and shall have free and full access thereto for said purposes and for the purpose of making extracts therefrom. In addition, Licensee agrees to use its best efforts to enable Licensor to audit and review the records of any and all manufacturing facilities producing articles utilized in connection with the Product and all storage facilities in order to verify the accountings submitted by Licensee and to assure Licensor that unauthorized merchandise is not being distributed with or without the knowledge and consent of Licensee. In connection with the foregoing, in the event that the calculation of royalties hereunder is determined by a computer base system, then the books and records of Licensee shall include, without limitation, the machine sensible data (e.g. punch cards, magnetic tapes, discs, etc.) utilized by such system and the related documentation describing such system. Any inspection shall be at Licensor's expense unless a discrepancy to Licensor's detriment in the amount of five percent (5%) or more is discovered, in which event Licensee shall bear such expenses, including, without limitation, reasonable accounting, auditing and legal fees and costs.

(f) Notwithstanding the other provisions of this Paragraph 2, Licensee agrees to pay Licensor the Advance as set out in Schedule A attached hereto. All payments pursuant to this subparagraph 2 (f) have been deemed non-returnable advances against royalties that may become due to Licensor pursuant to subparagraph 2(a) above.

3. TERM
(a) The Term of this Agreement shall commence as of the date of first written

PAGE 2

above and shall continue thereafter for the period laid out in Schedule A attached hereto.

4. **LICENSOR'S RIGHTS OF APPROVAL AND QUALITY CONTROL**
(a) Licensee represents, warrants, covenants and agrees that it will conduct its business in a manner designed to protect and enhance the reputation and integrity of the Artist and the goodwill associated therewith.

(b) Licensee shall, in sufficient time for review and consideration, submit for Licensor's discretional approval all materials relating the Product, including, without limitation, drawings, plans, blueprints, models, computer graphics, prototype samples and component parts of the Product and all packaging and promotional material in connection therewith prior to any use thereof by Licensee. All submissions shall be made prior to any use thereof, or public disclosure thereof, by or on behalf of Licensee. Any submission not approved in writing by Licensor within fourteen (14) days shall be deemed disapproved (see Schedules "B" (Approval Guidelines) and "C" (Approval Submission Form) which are attached hereto and made a part hereof). All approvals requested of Licensor under this Agreement may be granted or withheld by Licensor in its sole and absolute discretion.

(c) Licensee shall furnish to Licensor, at Licensee's cost, such artwork as may be reasonably necessary for the manufacture, advertising and promotion of the Product, subject to Licensor's absolute right of approval. Such artwork shall embody photograph(s) of Artist supplied to Licensee by Licensor, at Licensee's expense. All such artwork shall be and remain the property of Licensor, notwithstanding its creation or modification (which is also subject to Licensor's absolute approval) by Licensee, and shall be returned to Licensor after its use by Licensee. Licensee shall not use the artwork in any other manner. Any and all additions to, and new renderings, modifications or embellishments of, the artwork shall, notwithstanding their invention, creation and use by Licensee, be and remain the property of Licensor, and Licensor may use, and license others to use, the same, subject only to the provisions of this Agreement.

(d) Licensee shall secure from Licensor accurate information regarding copyright in the Product. Licensee agrees to affix to the Product, and to any format, design, carton, container or other packaging or wrapping, advertising, promotion or display material which depicts any of the Artist, a copyright notice in form and substance approved by Licensor. In addition, wherever the name of the Artist shall appear, Licensee shall affix the symbol "(R)" or "TM", as Licensor shall designate. Licensee further agrees to affix to any such material, such other reasonable notice or notices of trademark and copyright as requested by Licensor to protect Licensor's rights and interest in the Artist. Licensee agrees to obtain Licensor's specific written instructions with respect to all such notices requested or desired to be affixed pursuant to this subparagraph 4(c).

(e) Licensee agrees that all licensed materials and all tags, labels, imprints, cartons, containers, packaging and wrapping material, advertising, promotion and display material which depict or portray any visual representations of the Artist, shall also bear the name of the Artist or such other identifying name or feature as Licensor shall reasonably determine in such style as Licensor shall from time to time reasonably require.

(f) Licensee warrants that the Product shall be of high standards and of such style, appearance and quality as to be adequate and suited to their exploitation to the best

advantage and to the protection and enhancement of the Artist and the good will pertaining thereto; and will be manufactured, sold and distributed in accordance with all applicable federal, state and local laws. The policy of sale, distribution and exploitation by Licensee shall be of high standard and to the best advantage and shall in no manner reflect adversely upon the good name of Licensor or the Artist. To this end Licensee shall, prior to production, provide Licensor with prototype art, chromelins or color separations for each item licensed to be produced hereunder, along with a reasonable number of samples of designs of all cartons, containers, and packaging and wrapping material, for Licensor's written approval. In addition, before selling or distributing any of the Product, Licensee shall furnish to Licensor free of cost, for its written approval, TEN (10) production samples of each of the product, plus an additional TEN (10) samples of product bearing each design change. Licensee also agrees to furnish to Licensor, for its written approval, specimens or samples of all advertising or promotional material relating to the Artist (or any element thereof). Licensee specifically agrees not to use or utilize any of such materials without having first obtained Licensor's written approval. All approvals requested pursuant to this paragraph 4(e) shall not be unreasonably withheld or delayed. If, due to the manner in which any article licensed to be produced hereunder is manufactured, an actual production specimen cannot be individually produced (as for example with a fully automated plant), Licensee shall pay for and provide round trip first class transportation, accommodations and living expenses in order for Licensor's representative to travel to the manufacturing facility to review the first production run and to approve or disapprove the said production samples thus obtained. Any item submitted to Licensor for its approval pursuant to this Paragraph 4 shall not be utilized unless and until the same shall be approved by Licensor in writing. After samples have been approved pursuant to this paragraph 4, Licensee shall not depart therefrom in any material respect without Licensor's prior written consent. After Licensee has commenced selling or distributing the Product and upon Licensor's written request, Licensee shall furnish without cost to Licensor not more than ten (10) additional random samples of each of the Product, together with any cartons, containers and packaging and wrapping material used in connection therewith, at regular intervals, but not more than four (4) times per year. If the quality of any of the Product unintentionally falls below that reflected in the original samples, Licensor shall have the right to withdraw its approval as to such items in which case Licensee shall immediately cease offering for sale or selling the same. If the quality of the Product otherwise falls below that reflected in the original samples, Licensor shall have the right to terminate this Agreement in accordance with the provisions of Paragraph 12.

    (g)    It is specifically understood that Licensor's approvals pursuant to this Paragraph 4 shall not in any manner be deemed an authorization or specific grant of rights to use or utilize any word, symbol, or design (other than the Artist specifically licensed hereunder) in connection with the sale of articles hereunder, and Licensee shall be solely responsible for any liability relating to claim of copyright or trademark infringement or unfair competition based upon the use of any such materials (other than the Artist specifically licensed hereunder) in alleged violation of another party's rights.

    (h)    Licensee will permit Licensor or its representative at all reasonable times and upon reasonable WRITTEN notice to enter Licensee's premises for the purpose of

inspecting the Product or the method of manufacture thereof prior to and during their sale and distribution; and shall make similar arrangements for inspection of any process performed by a sub-contractor.

5. SUB-CONTRACTING

If Licensee wishes to sub-contract any step in the manufacture of the Product, it may do so with Licensor's written approval, not to be unreasonably withheld or delayed, and only after it notifies Licensor in writing of the name and address of the following; the proposed party and all its principals; the products which such party has theretofore produced and a written undertaking in a form furnished by Licensor by which such party agrees to conditions relating to, inter alia, quality control, reporting, access and non-bootlegging activities. In any event, all acts of such sub-contractor shall be deemed the acts of Licensee for all purposes and such party's failure to fully and properly account to Licensee shall not relieve Licensee of any liability resulting therefrom.

6. DESIGNS RESERVATION OF RIGHTS

Promptly following the execution of this Agreement, Licensee shall submit to Licensor the designs as set out in Schedule A attached hereto. All rights and interests with respect to the Artist not specifically granted to Licensee herein shall be and are specifically reserved to Licensor and/or its Licensees without limitation during the Term hereof.

7. INFRINGEMENT

Licensee agrees to assist Licensor without further cost to Licensee to the extent necessary to protect any of Licensor's rights to the Artist. For this purpose, Licensor may, in its sole discretion, commence or prosecute any claims or suits in its own name or in the name of Licensee or join Licensee as a party thereto. Licensee shall notify Licensor in writing of any infringements or imitations by others of materials similar to those covered by this Agreement which may come to Licensee's attention, and Licensor shall have the right to determine whether or not any action shall be taken on account of such infringements or imitations. Licensee shall not institute any suit or take any action on account of any such infringements or imitations without first obtaining the prior written consent of Licensor to do so.

8. LICENSEES RESTRICTIONS

(a) During the Term hereof Licensee shall;
    (i) Not attack the title of Licensor or the Artist;
    (ii) Not harm, misuse or bring into disrepute the Artist;
    (iii) Manufacture, sell and distribute the Product in an ethical and legal manner in accordance with the terms and intent of this Agreement;
    (iv) Not create any expense chargeable to Licensor without the prior written approval of Licensor;
    (v) Protect to the best of its ability its right to manufacture, sell and

PAGE 5

distribute the Product hereunder;

(vi) Not use the Product for combination sales, as premiums, give-aways or for any similar method of merchandising and exercise due care that its customers likewise will refrain from making such use of the Product.

(vii) Not enter into agreements relating to the Artist for commercial tie-ups or promotions without prior written approval from the Licensor;

(viii) Not sell the Product to any parties whose business practices are unlawful;

(ix) Not use the Artist or any portion thereof with or in connection with a name or trademark of any other party such as to create the impression that any trademark or property rights of Licensor are related to any such right of a third party, including Licensee. However, Licensee may use its own trademark and other identifying material in such manner as to identify it as the actual source of the manufactured article so long as no confusion would result and subject always to Licensor's right of approval as provided in Paragraph 4 hereinabove; and

(x) Not sell the Product through so-called mail order or catalogue-type sales directly to the general public. The Licensee will, from time to time, sell to the Licensor or their representatives, undisclosed amounts of the Product at the Licensees lowest discounted wholesale price for the purposes of its own Fan Club/Mail order operation or its own tour merchandising operation and retail stores owned or operated by Licensor or its affiliates.

(b) Upon the termination or expiration of this Agreement, Licensee will be deemed to have assigned, transferred and conveyed to Licensor any trade rights, equities, good will, title or other rights in and to the Artist which may have been created or obtained by Licensee or which may have vested in Licensee in pursuance of any endeavors covered hereby, and Licensee will execute any instruments requested by Licensor to accomplish or confirm the foregoing. In the event Licensee has to execute any such instruments, within five (5) days after Licensor's request therefor, Licensor shall execute such instruments on behalf of Licensee. Every use of the Artist or any portion thereof by Licensee shall inure to the benefit of Licensor. Licensee shall not at any time acquire any rights in such Artist by virtue of any use it may make pursuant hereto.

9. **WARRANTY AND INDEMNIFICATION**

(a) Licensor represents and warrants that it has the full power and authority to enter into this Agreement and to convey the rights hereby granted, and that the execution and delivery thereof will not result in a violation of, or breach under any agreement to which Licensor is a party or by which they may be bound. Licensor agrees to indemnify and hold harmless Licensee against any claims or suits arising out of a breach of the foregoing warranty finally adjusted in a court of competent jurisdiction or settle with Licensor's prior written consent, provided that prompt notice is given to Licensor of any such claim or suit and provided further that Licensor shall have the option to undertake and conduct the defense of any such suit and no settlement of any such claim or suit is made without the prior written

consent of Licensor.

(b) Licensee represents and warrants that Licensee has the full power and authority to enter into and perform this Agreement, that there is no contract, agreement or understanding with any other person, firm or corporation which would interfere with the obligations assumed by Licensee hereunder and that, except for claims relating solely to the Artist which are subject to licensor's warranties as provided in subparagraph 9(a) above, the Product will not infringe upon or violate any patent, copyright, trademark, trade name, literary, artistic or other property right, right of privacy or any other right of any person, firm or corporation and will not contain any libelous or unlawful material.

(c) Licensee agrees to indemnify and hold harmless Licensor, its employees, officers, directors, stockholders, licensees, successors, and assigns from and against any and all losses, damages, costs and expenses, including reasonable legal fees and expenses incident thereto, arising from any suit, claim or demand based upon any of the following; breach of its warranties, representations or covenants as contained in the Agreement; any alleged unauthorized use of any patent, process, idea, method or device by Licensee in connection with the Product; and other alleged action by Licensee including, without limitation, any alleged copyright or trademark infringement or act of unfair competition, and any claim, suit, loss or damage (including reasonable attorneys' fees) arising out of alleged defects in the product. Licensee shall receive prompt written notice of any such claim or suit and may participate in the defense of any such action and Licensor agrees that it shall not settle any such action which results in liability to Licensee without Licensee's written consent. Licensee agrees that it will obtain and maintain, at its own expense throughout the Term of this Agreement, product liability insurance providing adequate protection in an amount no less than $500,000.00 per claim and $1,000,000.00 in the aggregate naming Licensor, its officers and directors, and the individual members of the Artist as additional insureds. As proof of such insurance, a fully paid certificate of insurance reflecting the foregoing shall be submitted to Licensor by Licensee for Licensor's prior approval before any of the Licensed materials are distributed or sold, and at the latest within thirty (30) days after the commencement of the Term of this Agreement. Such policy shall contain a provision requiring the insurance company to give at least ten (10) days written notice prior to any revision, modification or cancellation thereof. Any proposed change in certificates of insurance shall be submitted to Licensor for its prior written approval. Licensor shall be entitled to a copy of the then prevailing certificate of insurance, which shall be furnished to Licensor by Licensee.

10. <u>LIMITATIONS ON USE OF PRODUCT</u>
Licensee recognizes that the license herein granted concerns both copyright and trademark rights owned and controlled exclusively by Licensor or the Artist. Licensee acknowledges, as a material part of this agreement, that the Product authorized herein are intended to be sold and will be sold to the general public, as finished goods, in the form submitted to Licensor as provided in Paragraph 4(e) (relating to approval of actual production samples); and that the sale of a portion (but not all) of such Product or the use of such Product in combination with any other materials to form a new or combination product (or new version of the Product) will constitute an infringement of the copyright and/or trademark rights of Licensor or the Artist. Licensee agrees to notify Licensor of any

instances brought to its attention, or which it discovers, wherein the product is sold in part only or is used in combination with other materials to form a new product or new version, and agrees that it shall not itself produce or participate in the production of any such new product or new version. Licensee further agrees that should it violate the Agreement contained in the immediately preceding sentence, Licensor may forthwith terminate this Agreement by giving Licensee written notice to such effect.

11. **SOLE AND EXCLUSIVE OWNERSHIP**
Licensee acknowledges that the Licensor is the sole owner of all right, title and interest in and to the Artist; that any copyright and trademark right or any other rights which may be created in any article, label, design or other material bearing or including the Artist, are and shall be the sole and exclusive property of Licensor; that Licensee has and will hereby acquire no rights in the Artist; that design or other material bearing or including the Artist, other than the right to use the same as herein provided, shall be the exclusive property of the Licensor; and that at no time will Licensee, either during the Term of this Agreement or thereafter, claim any rights therein or register any word, device or symbol confusingly similar to the Artist or any similar or related mark or any copyright or other rights which may be created in any article, label, design or other material bearing the Artist or any similar or related mark, except pursuant to this Agreement. All use of the Artist by Licensee pursuant to this Agreement shall inure to the benefit of the Licensor. In the event that if for any reason any such materials are deemed not be owned by Licensor, then all rights therein, including the worldwide copyright, shall be deemed, and are hereby assigned to Licensor by this Agreement. Licensee further agrees to execute any document which Licensor may reasonably request in order to confirm or evidence its ownership of such rights and if Licensee fails to promptly do so, Licensor may execute such document in Licensee's name. Notwithstanding anything to the contrary contained herein or in any such document of Assignment as described above, Licensor shall not exploit any such designs assigned to Licensor except as embodied in the Product and on promotional and/or advertising material related thereto, without Licensee's consent.

12. **TERMINATION**
(a) This Agreement shall automatically and immediately terminate if any one or more of the following events occur:
    (i) The filing of a voluntary petition in bankruptcy with respect to Licensee, or the filing of an involuntary petition which is not discharged within thirty (30) days from the date of filing;
    (ii) The execution by Licensee of an assignment for the benefit of creditors, or a composition of creditors;
    (iii) The insolvency (as that term is defined under the federal laws of

bankruptcy) of Licensee;

    (iv)    The appointment of a receiver or Licensee or any of its property which is not discharged within thirty (30) days from the date of filing; or

    (v)    Licensee's statement of sale shall prove erroneous in Licensee's favor by a discrepancy of more than ten (10%) percent of sales reported.

    (b)    Subject to there terms of sub-paragraph 12(a) above and any applicable grace or cure period otherwise provided in this Agreement, if Licensee breaches any of the other terms and conditions of this Agreement, then, in such event, Licensor may, at its option, terminate this Agreement on thirty (30) days' prior written notice to Licensee. If Licensee, within that time, shall have removed the cause or causes of termination to the reasonable satisfaction of Licensor, Licensor may rescind, in writing, its notice of termination. Any use of the Artist by Licensee not specifically authorized hereunder shall, in addition to constituting a breach of this Agreement, be deemed as well to be an infringement of any copyright on the artwork involved.

    (c)    If Licensee shall not have commenced in good faith the manufacture and distribution in substantial quantities of all the Licensed Materials within six (6) weeks of approval by Licensor of production samples for each item (which Licensee agrees to submit within three (3) weeks from the date when artwork is approved by Licensor) or if at any time thereafter in any calendar quarter Licensee fails actively to offer for sale to the general public all the Licensed Items, Licensor (in addition to all other remedies available to it hereunder) may terminate this Agreement with respect to any items or class or category thereof which have not been manufactured or offered for sale during such quarter, by giving written notice of termination to Licensee. Such notice shall be effective when mailed by Licensor. If after such initial six (6) week period, in any calendar quarter Licensee fails actively to offer for sale to the general public all of the Licensed Items in the territory, Licensor may terminate this Agreement by giving written notice of termination to Licensee. Such notice shall be effective when mailed to Licensee.

    (d)    The obligations assumed by Licensee in Paragraphs 2, 7, 8, 9, and 11 and by Licensor in Paragraph 9 shall survive any termination or cancellation of this Agreement pursuant to this Paragraph 12 or otherwise.

    (e)    In the event of any material breach of this Agreement by Licensee, Licensee;

    (i)    Agrees to pay Licensor's reasonable attorney's fees and accountant's fees incurred in the enforcement of this Agreement; and

    (iii)    Agrees that such attorney's fees and accountant's fees shall be deemed to be part of Licensor's costs in any judgement awarded to Licensor, in addition to the obligations set forth in subparagraph 12(d) above.

13.    <u>ARTWORK AND PHOTOGRAPHS</u>

    (a)    In all cases where Licensee desires artwork involving the Product which is the subject of this Agreement to be prepared, the cost of such artwork and the time for the production thereof shall be borne by Licensee. All artwork and designs involving the Artist, or any reproduction thereof shall, notwithstanding their invention or use by Licensee, be and remain the property of Licensor, provided that Licensor shall not make use of such designs or artwork accept as provided in Paragraph 11 above which shall be entitled to use the same

PAGE 9

and to license the use of same to others, except on items licensed hereunder during the Term of this Agreement.

(b) Licensor shall have the right, but shall not be under any obligation, to use the Artist and/or the name of the Licensee so as to give the Product, Artist, Licensee, Licensor and/or Licensor's enterprises full and favorable prominence and publicity.

(c) Licensor shall be under no obligations to provide Licensee with artwork, photographs or other material bearing the Artist to enable Licensee to perform its obligations hereunder, other than as set for in Paragraph 6 above.

(d) Licensee specifically agrees that should it obtain photographs, artwork, or other material bearing the Artist for use in creating the Product hereunder, it shall only use the same after obtaining from the photographer, artist or other creator thereof an assignment of all rights in favor of the Artist. Should Licensee commission the taking or creation of any photographs, artwork or other material bearing the Artist for use in creating the Product hereunder, Licensee agrees that same shall only be performed as a "work made for hire" commissioned by Licensee under a "contract of service" pursuant to which Licensee shall be deemed the "author" and proprietor thereof; and Licensee shall promptly thereafter assign all rights in and to such photographs, artwork or other material to the Licensor.

14. **DISTRIBUTION**

(a) Licensee agrees that during the term of this Agreement it will diligently and continuously manufacture, distribute and sell the Product covered by this Agreement and that it will make and maintain adequate arrangements for the distribution of the Product.

(b) Licensee agrees that it will sell and distribute the Product covered by this Agreement outright and not on approval, consignment or sale-or-return basis and only to jobbers, wholesalers and distributors for sale and distribution to retail stores and merchants, and to retail stores and merchants for sale and distribution direct to the public. Licensee shall not, without prior written consent of Licensor, knowingly sell or distribute such Product to jobbers, wholesalers, distributors, retail stores or merchants whose sales or distribution are or will be made for publicity or promotional tie-in purposes, combination sales, premiums, give-aways, or similar methods of merchandising. In the event any sale is made to any of Licensee's subsidiaries or to any other person, firm or corporation related in any manner to Licensee or its officers, directors or major stockholders, the royalty paid on such sales shall not be less than the royalty based upon the price generally charged to the trade by Licensee.

(c) Licensee agrees to sell to Licensor such quantities of the product as Licensor shall from time to time order and at the lowest discounted trade price.

15. **DISPOSAL OF STOCK UPON EXPIRATION OF TERM**

(a) Upon termination of this Agreement solely by reason of the passage of time (i.e. not by reason of any automatic termination or termination on notice), Licensee may, except as otherwise provided in this Agreement, dispose of the Product covered by this Agreement which are on hand or in process at the expiration of the term for a period of three (3) months following such expiration, provided royalties with respect to that period are paid and statement for that period are furnished. Notwithstanding anything to the contrary herein,

Licensee shall not manufacture, sell or dispose of the Product covered by this Agreement or use any format, design, cartons, containers or packing or wrapping material, or advertising, promotional or display material, whether before or after the expiration of this Agreement, upon which Licensee has failed to affix the notice of copyright, trademark or service mark or any other notice required pursuant to subparagraph 4(c) above, or which has not been approved by Licensor pursuant to subparagraphs 4(b) and 4(d) above. Following the expiration of the sell-off period, Licensee shall destroy its remaining inventory of the Product under the supervision of Licensor or Licensor's designee, or at Licensor's option, without such supervision, provided Licensee furnish Licensor with an affidavit attesting to such destruction, sworn to by an principal officer of Licensee.

       (b)    During the last two months of the Term of this Agreement, Licensee will not manufacture any more articles authorized hereby than it appears likely to sell (based upon prior sales of such articles during the Term hereof) in the normal course of business and without any special promotional activities.

16. **EFFECT OF TERMINATION OR EXPIRATION**
Upon and after the expiration or termination of this Agreement all rights granted to Licensee hereunder shall forthwith revert to Licensor, and Licensor shall be free to license others to use the Artist, or any portion thereof, in connection with the manufacture, sale and distribution of the product covered hereby and Licensee will refrain from further use of the Artist, or any further direct or indirect reference to, or anything deemed by Licensor to be similar to the Artist in connection with the manufacture, sale or distribution of Licensee's products, except as provided in Paragraph 15 above.

17. **NON-BOOTLEGGING**
It is of the essence of this Agreement that neither Licensee nor any of its principal (i.e. owners, officers, directors or managers) be involved, either directly or indirectly in the manufacture, distribution, advertising or sale of any bootleg popular music novelty merchandise ("PMNM"), which is defined as any merchandise bearing the name, trademark, logo or likeness of any living popular music performer or active group is such item was not, to Licensee's belief, manufactured and distributed pursuant to a then current authorization from such performer/group or their authorized representative. Licensee represents and warrants that it and all of its principals (as above defined) are not presently, and shall not be, during the term hereof, involved either directly or indirectly, in the manufacture, distribution, advertising or sale of bootleg PMNM. In the event of a breach of any representation or undertaking contained herein, Licensor may forthwith terminate this Agreement upon written notice to Licensee. In such event, the balance of all guarantees then unpaid shall become due and payable immediately.

18. **NOTICES**
All notices, requests, consents and other communications required or permitted to be given hereunder shall be in writing and delivered personally or sent by

PAGE 11

certified or registered mail, postage prepaid, as follows:
(a)   If to the Licensor:
      Bob Marley Music, Inc.
      8920 Sunset Blvd.
      Los Angeles, CA 90069
      and:

      Stephanie Levine
      Bob Marley Music, Inc.
      825 8th Avenue 24th Floor
      Worldwide Plaza
      New York, NY 10019

(b)   If to the Licensee:
      Rich Rogala
      Jurek International Graphics
      712 Industrial Drive
      Bensenville, IL 60106

Any notice so given be deemed received when delivered personally, or if mailed, when deposited, postage prepaid, in the United State mails. Either party may change the address to which notices are to be sent by giving written notice of such change of address to the other party in the manner herein provided for giving notice.

19.  **GENERAL**
     (a)   This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California applicable to agreements executed and wholly to be performed therein.
     (b)   The section headings contained herein are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.
     (c)   Nothing herein contained shall be construed to place the parties in the relationship of partners or joint venturers and Licensee shall have no power to obligate or bind Licensor in any manner whatsoever.
     (d)   This Agreement sets forth the entire Agreement and understanding of the parties hereto, and supersedes all prior agreements, arrangements and undertakings between the parties hereto. No representation, promise or inducement has been made by any party that is not embodied in this Agreement and no party shall be bound by or liable for any alleged representation, promise or inducement not so set forth.
     (e)   This Agreement is personal to Licensee and neither this Agreement nor any of the Licensee's rights or obligations hereunder may be assigned, pledged or encumbered by Licensee without the prior written approval of Licensor, except to a company wholly owned by Licensee or which owns at least sixty percent (60%) of Licensee.

(f) This Agreement may be amended, modified, superseded or canceled and the terms of covenants hereof may be waived, only by a written instrument executed by both parties hereto or, in the case of a waiver, by the party waiving compliance. The failure of either party at any time or times to require performance of any provision hereof shall in to manner affect the right at a later time to enforce the same. No waiver by either party of the breach of any term or covenant contained in this Agreement, whether by conduct or otherwise, in anyone or more instances, shall be deemed to be, or construed as, a further or continuing waiver of any such breach or a waiver of the breach of any other term of covenant contained in this Agreement.

(g) Licensee warrants and represents that all royalty computations and payment terms (except guarantees and advances) set forth in this Agreement are and shall be no less favorable to Licensor than the royalty computations and payment terms contained in any Agreement heretofore or hereafter to be entered into which any other musical performing group or artist. In the event that Licensee shall at any time enter into an Agreement with any other musical performing group or artist where the royalty computation or payment terms are more favorable than those contained herein, Licensee shall forthwith send Licensor written notice thereof, together with true and complete extracts of the applicable provisions, and this Agreement shall automatically be deemed amended effective as of the date of such other Licensee to provide such more favorable rates and terms.

(h) Each party consents and submits to the jurisdiction and venue of the California Supreme Court for the adjudication of any dispute arising out of or relating to this Agreement, including the execution or breach thereof, and each party further agrees that any process issued in connection with the adjudication of such dispute may be served by certified or registered mail directed to the address provided in Paragraph 18 and such service by mail shall be of the same force and effect as if such process has been personally serviced within the State of California.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date shown.

By: Doreen Cruje**ras** _____
    For the "Licensor"

By: I_____
    For the "Licensee"

# SCHEDULE "A"

1. **DEFINITIONS**

    1.1  "The Designs" shall mean; all approved likenesses, faces, insignia, symbols and/or visual representations of the Artist together with any trademarks, logos or designs associated with the Artist.

    1.2  "The Product" shall mean: T-Shirts and Sweatshirts, bearing the Designs. For the avoidance of doubt, no rights are granted hereunder in respect of items of merchandise bearing designs other than the Designs approved by Licensor hereunder or in respect of any other items of merchandise. Each item of the Product shall carry a copyright notice in the form designated by Licensor.

    1.3  "The Merchandising Rights" shall mean: exclusive for the designs given for use on the product, within the Territory. The sole and exclusive right in the Territory to manufacture, exploit, distribute and/or sell the Product solely through retail and/or wholesale markets. For the avoidance of doubt, Licensee shall have no right to distribute and/or sell the Product in conjunction with the Artist's concert appearances or through fan club/direct mail, which rights are specifically reserved to Licensor.

    1.4  "The Artist" shall mean: Bob Marley

    1.5  "The Territory" shall mean: World X-Jamaica & The Caribbean

    1.6  "The Term" shall mean" (1) One Year

2. **ROYALTIES**

    2.1  "The Advance" as referred to in Paragraph 2(f) shall be: $10,000.00

    2.2  "The Guarantee" as referred to in Paragraph 2(b) shall be: $~~5,000.00~~ 10,000.00 *RJR*

    2.3  "The Royalty" as referred to in Paragraph 2(a) shall be: 15% of the wholesale price.

    2.4  The minimum wholesale price for royalty accounting purposes shall not be less than $13.00 for T-shirts and $20.00 minimum wholesale price for the Sweatshirts.

## APPROVAL GUIDELINES

Your Agreement with Bob Marley Music Inc., requires submission of all articles for review and written approval prior to production. **THE ATTACHED FORM MUST ACCOMPANY ALL MATERIAL SUBMITTED FOR APPROVAL.** Please send all materials to:

> Stephanie Levine
> Bob Marley Music, Inc.
> 825 8th Avenue 24th Floor
> Worldwide Plaza
> Tel. (212) 333-6798

Approval will be required at each of the following stages of preparation. This procedure insures that problems are caught early on, when they can still be changed, without great expense or time or money:

1. Layout concepts
2. Rough art
3. Final art
4. Prototype samples
5. Production samples or strike-offs

Note(a) In some instances, such as posters, approval of color proof may be required to insure quality of the final product.
Note(b) In addition, all materials re-submitted for approval each time a revision is made incorporating changes requested.

Please advise us of your time constraints, if any, so that we can respond on short notice, only if absolutely necessary. Also, please allow time to make necessary changes. The Approval time provided by the Agreement is generally ten (10) days. Every effort will be made to expedite approvals as quickly as possible. Samples of finished product must be submitted pursuant to the Agreement.

Please remember that all submissions not approved in writing are deemed disapproved.
Note (c) the symbol signifying that your is an "official product" must be affixed to all products, packaging, collateral materials, catalogs and brochures and advertising (logo provided).

PAGE 15

# SCHEDULE "C"
## LICENSED PRODUCT APPROVAL SUBMISSION FORM

LICENSEE_____

ARTIST_____

PRODUCT_____

DATE_____

In connection with the Licensed Product, we submit the following for your approval: (please tick where appropriate)

Concept          _____

Rough Art        _____

Finished Art     _____

Prototype        _____

Production Sample _____

# BMMI PRODUCT APPROVAL/EVALUATION FORM

SUBMITTING COMPANY _____

PRODUCT DESCRIPTION: _____

_____

In connection with the above noted submission for approval, our response is as follows:

APPROVED             BY:_____DATE:_____

APPROVED
WITH CHANGES         BY:_____DATE:_____

                     CHANGES:_____

                     _____

                     _____

                     _____

RESUBMIT
WITH CHANGES         BY:_____DATE:_____

                     CHANGES:_____

                     _____

                     _____

DISAPPROVED          BY:_____DATE:_____

                     EXPLANATION:_____

ADDITIONAL COMMENTS_____

_____

_____