UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS, WESTERN DIVISION

---

Jurek Zamoyski
aka Jerzy Berowski

   Plaintiff

                Case No. 08CV30125-KPN

v.

Fifty-Six Hope Road Music Limited, Inc.,
Bob Marley Music, Inc., and Zion Rootswear LLC

   Defendants

---

<u>DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND
MEMORANDUM OF REASONS IN SUPPORT</u>

Dated: July 24, 2009

Respectfully submitted,

DEFENDANTS, FIFTY SIX HOPE ROAD MUSIC LTD.,
BOB MARLEY MUSIC, INC. AND
ZION ROOTSWEAR, L.C.

By its attorneys,

_____
TIMOTHY J. ERVIN
BBO#567042
GALLANT & ERVIN, LLC
1 Olde North Road, Ste. 103
Chelmsford, MA 01824
P (978) 256-6041
F (978) 256-7977

Email: tim@gallant-ervin.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. iii

APPENDIX OF EVIDENCE ................................................................................. vi

I. INTRODUCTION ................................................................................................2

II. UNDISPUTED MATERIAL FACTS .................................................................2

      1. BACKGROUND ......................................................................................2

      2. BOB MARLEY RIGHTS .........................................................................3

      3. FORMATION OF JUREK GRAPHIC INTERNATIONAL .....................4

      4. LICENSE AGREEMENT BETWEEN BMMI AND JIG ..........................5

      5. STATUTE OF LIMITATIONS & LACHES ...........................................10

III. ARGUMENT ....................................................................................................12

    A. The Standard of Review for a Motion for Summary Judgment ......................12

    B. Plaintiff's Claims are Barred by the Applicable Statute of
       Limitations Because He Failed to Bring Suit Within Three Years
       of the Repudiation of His Claimed Ownership of the Copyrights In
       and To the Items In Issue ...............................................................................13

          1. Claims of Copyright Ownership Are Subject To The
          Copyright Act's Three Year Statute Of Limitations ..............................14

          2. Defendants Again Affirmatively Repudiated Plaintiff's Claims
          of Copyright Ownership in February 2005 and Plaintiff Failed
          to Timely File a Claim To Establish His Alleged Copyright
          Ownership .................................................................................................17

    C. Alternatively, Plaintiff's Copyright and Unjust Enrichment Claims
       Are Barred by the Doctrine of Laches ...........................................................19

    D. Assuming *Arguendo* That the Plaintiff's Claims Are Not Barred
       By the Applicable Statue Of Limitations Or Laches; Plaintiff's
       Claims Are Barred As Plaintiff Is Not The Rightful Holder Of
       Any Copyright In And To Any Of The Items In Issue Pursuant
       To The Express Language of The License Agreement ..................................22

      1. The Plaintiff's Own Actions Establish His Knowledge And Assent To The Terms Of The License Agreement And Upon Which Defendants Justifiably Relied..........................................................24

      2. Independent Witness Testimony Establishes Plaintiff Was Aware Of and Consented To The Terms Of the License Agreement........26

  E. The Plaintiff's Unjust Enrichment Claim is Preempted by The Copyright Act ...........................................................................................27

REQUEST FOR RELIEF ...........................................................................................29

REQUEST FOR ORAL ARGUMENT ......................................................................29

CERTIFICATE OF SERVICE ...................................................................................29

# **TABLE OF AUTHORITIES**

*Baco v. TMTV Corp.*,
    436 F.Supp.2d 311 (D. Puerto Rico 2006) ................................................14, 15, 18

*Binkley Co. v. Eastern Tank, Inc.*,
    831 F. 2d 333, 337-38 (1ST Cir. 1987) .........................................................................25

*Bruce v. Worldwide News, Inc.*,
    310 F. 3d 25, 27 n.1 (1st Cir. 2002) ..............................................................................14

*Cambridge Literary Props. v. W. Goebel Porzellanfabrok G.m.b.H & Co.*,
    510 F. 3d at 81 (1st Cir. 2007) ..............................................................13-15, 17-18

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 322-24 (1986) ...................................................................................12, 13

*City of Haverhill v. George Brox, Inc.*,
    47 Mass. App. Ct. 717 (Mass. App. Ct. 1999) .........................................................23

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
    36 F.3d 1147, 1164 (1st Cir. 1994) ..........................................................................27, 28

*DeVaux v. American Home Assur. Co.*,
    387 Mass. 814 (1983) ..................................................................................................24

*Doyle v. Huntress, Inc.*,
    513 F.3d 331 (1st Cir. 2008) ........................................................................................19

*Feist Publishing, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340, 345 (1991) ................................................................................13, 22, 26

*Freedenfeld Associates, Inc., v. McTigue, et al.*,
    531 F.3d 38, 44 (1st Cir. 2008) ......................................................................13, 22, 26

*Gaimain v. McFarlane*,
    360 F.3d 644, 653 (7th Cir. 2004) ..............................................................14, 15, 18

*Gardner v. Panama R. Co.*,
    342 U.S. 29, 31 (1951) .................................................................................................20

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*,
    9 F.3d 823, 846-47 (10th Cir. 1993) ...........................................................................27

*Greenstein v. Flatley*,
    19 Mass. App. Ct. 351, 357 (Mass. App. Ct. 1985) ...........................................25, 26

*Harper & Row Publishers, Inc. v. Nation Enterprises,*
   471 U.S. 539, 548 (1985) ............................................................................... 13, 22, 27

*Havlik v. Johnson & Wales Univ.,*
   509 F.3d 25, 29 (1st Cir. 2007) ................................................................................ 13

*Imperial Residential Design, Inc v. The Palms Dev. Group, Inc.,*
   70 F.3d 96, 99 (11th Cir. 1995) ................................................................................ 23

*Jalbert v. Grautski,*
   554 F.Supp.2d 57, 70 (D.Mass. 2008) ................................................................ 24, 26

*Lotus Development Corp. v. Paperback Software International, et al.*
   740 F. Supp. 37, 40 (D.Mass. 1990) .................................................................. 20, 21

*National Basketball Ass'n v. Motorola, Inc.,*
   105 F.3d 841, 848 (2nd Cir. 1997) ............................................................................ 27

*New Era Publishing Int'l v. Henry Holt & Co.*
   873 F.2d 576, 584 (2nd. Cir. 1989) ........................................................................... 21

*Puerto Rican-American Insurance Co v. Benjamin Shipping Co.,*
   829 F.2d 281, 283 (1st Cir. 1987) ............................................................................ 20

*Santa-Rosa v. Combo Records,*
   471 F.3d 224, 227 (1st Cir. 2006) ............................................................. 13-18, 27-28

*Schwanbeck v. Federal-Mogul Corp.,*
   412 Mass. 703, 707 (Mass. 1992) ............................................................................ 23

*TAG/ICIB Servs., Inc. v. Pan Am. Grain Co.,*
   215 F.3d 172, 175 (1st Cir. 2000) ............................................................................ 19

*Theos & Sons, Inc. v. Mack Trucks, Inc.,*
   431 Mass. 736, 745 (2000) ...................................................................................... 24

*Tilo Roofing Co. v. Pellerin,*
   331 Mass. 743, 746-747 (Mass. 1954) ................................................................ 22, 23

*T-Peg, Inc. v. Vermont Timer Works, Inc.,*
   459 F.3d 97 (1st Cir. 2006) ...................................................................................... 13

*Trandes Corp. v. Guy F. Atkinson Co.,*
   996 F.2d 655, 658-60 (4th Cir.),
   cert. denied, 126 L. Ed. 2d 377, 114 S. Ct. 443(1993) ............................................ 27

*Warren Freedenfeld Associates, Inc., v. McTigue, et al.*,
   531 F.3d 38, 44 (1st Cir. 2008) ...........................................................................13

*Zapatha v. Dairy Mart, Inc.*,
   381 Mass. 284, 291 ...........................................................................................23

### *Statutes and Treatises*

17 U.S.C. § 101 .................................................................................................13

17 U.S.C. § 204(a) .............................................................................................23

17 U.S.C. § 301(a) .......................................................................................27, 28

17 U.S.C. § 501 .................................................................................................13

17 U.S.C. § 507(b) .......................................................................................14, 19

1 *Nimmer* on copyright § 1.01 [B] [h], at 1-35 to 1-36.1 .................................28

## APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The Defendants' Motion and Memorandum of Reasons is based upon the following documentary evidence contained in the Appendix which is incorporated herein by reference:

| | |
|---|---|
| EXHIBIT 1: | Plaintiff's Complaint; |
| EXHIBIT 2: | Fifty Six Hope Road Music, Ltd. and Bob Marley Music, Inc.'s Answer and Counterclaim; |
| EXHIBIT 3: | Zion Answer and Counterclaim; |
| EXHIBIT 4: | Rasta Dreads Copyright Registration and Specimen Exhibit; |
| EXHIBIT 5: | Lion Zion Copyright Registration and Specimen Exhibit; |
| EXHIBIT 6: | Kaya Man Copyright Registration and Specimen Exhibit; |
| EXHIBIT 7: | Excerpts of Deposition Testimony Jurek Zamoyski; |
| EXHIBIT 8: | Bob Marley United States Trademark Registration; |
| EXHIBIT 9: | Defendants' Answers to Plaintiff's Interrogatories; |
| EXHIBIT 10: | Excerpts of Deposition Testimony of Richard Rogala, Sr.; |
| EXHIBIT 11: | License Agreement between Jurek International Graphics and BMMI; |
| EXHBIIT 12: | Zamoyski transmittal letter to BMMI enclosing Lion Zion Design; |
| EXHIBIT 13: | Zamoyski transmittal letter to BMMI enclosing Kaya Man Design; |
| EXHIBIT 14: | Excerpts of Deposition Testimony of Doreen Crujeiras; |
| EXHIBIT 15: | Plaintiff's Answers to Defendants' Interrogatories; |
| EXHIBIT 16: | New Buffalo T-shirt Print Out of Designs; |
| EXHIBIT 17: | Letter from Zamoyski to Richard Rogala, Sr. October 2003; |
| EXHIBIT 18: | Letter from Zamoyski Counsel to Zion dated February 16, 2005; |
| EXHIBIT 19: | Zion letter of response dated February 23, 2005; |

# MEMORANDUM OF REASONS IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION:

This matter involves claims commenced by the Plaintiff, Jurek Zamoyski a/k/a Jerzy Berowski (hereinafter "Plaintiff" or "Jurek") alleging copyright infringement (Count I) and unjust enrichment (Count II) arising out of the advertisement, manufacture, distribution and sale of products depicting three Bob Marley designs known as "Kaya Man," "Lion Zion," and "Rasta Dreads" (hereinafter "Items in Issue"). The defendants, Bob Marley Music, Inc. ("BMMI"), Fifty Six Hope Road Music, Ltd. ("Hope Road"), and Zion Rootswear, L.C. ("Zion" and hereinafter collectively with BMMI and Hope Road as either "Marley Parties" or "Defendants") deny that they have engaged in any actions of infringement and have in turn brought counterclaims against the Plaintiff for breach of contract (Count I of Counterclaim); declaratory judgment (Count II of Counterclaim); for frivolous action under G.L. c.231, §6(F) (Count III of Counterclaim); and violation of Chapter 93A, §11 (Count IV of Counterclaim). The Defendants now move this Court for the entry of summary judgment in their favor as to Counts I and II of the Plaintiff's Complaint, and on Count II of their Counterclaim seeking declaratory judgment on the ownership of the copyrights in and to the works forming the basis of this action. As set forth below, the Defendants aver that they are entitled to judgment as a matter of law on Plaintiff's copyright infringement and unjust enrichment claims, as well on their claim for declaratory judgment.

## II. UNDISPUTED MATERIAL FACTS

### 1. BACKGROUND:

1. The moving parties seeking summary judgment in this matter are the Defendants/Plaintiffs-in-Counterclaim, Fifty Six Hope Road Music, Ltd. ("Hope Road"),

2

Bob Marley Music, Inc. ("BMMI"), and Zion Rootswear, L.C. (hereinafter "Zion" and collectively with Hope Road and BMMI as "The Marley Parties"). (See Plaintiff's Complaint, Exhibit "1" to the Defendants' Motion and Memorandum of Reasons in Support of their Motion for Summary Judgment[1]; See also, Answer and Counterclaim of the Defendants Hope Road and BMMI, Exhibit "2;" See also, Answer and Counterclaim of the Defendant Zion, Exhibit "3.")

2. The Marley Parties have been named Defendants in a suit commenced by the Plaintiff/Defendant in Counterclaim, Jurek Zamoyski a/k/a Jerzy Berowski (hereinafter "Plaintiff" or "Zamoyski") alleging infringement of copyright (Count I) and for Unjust Enrichment (Count II). (See Exhibit "1")

3. Plaintiff claims that the Marley Parties have infringed his copyrights in and to three Bob Marley designs known as: 1) Rasta Dreads; 2) Lion Zion; and 3) Kaya Man. (Complaint Exhibit "1" at ¶8; See Exhibits 4, 5 and 6 which comprise the design and copyright registration filed by Plaintiff with the United States Copyright Office as to each design). The three disputed designs are hereinafter referred to as the "Items In Issue."

4. The Items In Issue are the only designs that Plaintiff claims have been infringed by the Defendants. (Exhibit 7, Deposition Transcript of Zamoyski, at page 31, lines 8 through 11).

### 2.    BOB MARLEY RIGHTS

5. Hope Road is the owner of a federal trademark registration in and to the name of the late great reggae performer Robert Nesta Marley a/k/a Bob Marley and the Registration is listed on the Principal Register with the United States Patent and Trademark office. (See

---

[1] All references to Exhibits are to the exhibits submitted in support of the Defendants' Motion and Memorandum of Reasons in Support of Their Motion for Summary Judgment, and will hereinafter be denoted as: "See Exhibit __").

Exhibit "8").

6. In addition, Hope Road is the owner and licensor of certain rights in the picture, name, photograph, likeness, image, signature and other indicia of the late Bob Marley and the Corporation is owned, operated and controlled by the surviving children of the late Bob Marley. (See Exhibit "9," Defendants Answers to Interrogatories, Interrogatory Response No. 2). In 1995, BMMI was acting as the licensing agent for Hope Road and would enter into and execute licensing agreements relative to the Marley Rights. (Exhibit "9", Defendants' Answers to Plaintiff's Interrogatories, Interrogatory Response No. 2).

7. Zion entered into a Licensing Agreement with Hope Road in 1999, which grants Zion the world-wide exclusive right to use the Marley Rights on t-shirts (long and short) and hats, as well as the non-exclusive right to use the Marley Rights on other general merchandise (Exhibit "2," Counterclaim at ¶ 9).

8. At all times Zion has been authorized by Hope Road to utilize artwork and other materials comprising the name, image, likeness and trademark of Bob Marley, including the Items In Issue. (Exhibit "2" Counterclaim at Paragraph 9).

### 3. FORMATION OF JUREK GRAPHIC INTERNATIONAL

9. In the early 1990's, Zamoyski was an artist working in and around Provincetown, Massachusetts. (Exhibit 7, Deposition Transcript Zamoyski at page 24, lines 9 through 16).

10. In or around 1991, Zamoyski met an individual by the name of Richard Rogala, Sr. who became a customer and purchased some of Zamoyski's work. (Exhibit 7, Deposition Transcript Zamoyski at page 40, lines 6 through 9).

11. In 1994, Rogala traveled to Provincetown and met with Zamoyski for the purpose of

setting up a business to merchandise and sell some of Zamoyski's works. (Exhibit 7, Deposition Transcript Zamoyski at page 46, lines 5 through 12). The parties ultimately reached agreement to enter into business together to exploit portraits of celebrities, including images of Bob Marley. (Exhibit 7, Deposition Transcript Zamoyski at page 47, line 17 through page 48 line 10).

12. By Agreement the new company was named Jurek Graphic International[2] and Zamoyski granted permission for the company to bear his professional artist name "Jurek" in the title. (Exhibit 7, Deposition Transcript Zamoyski at page 45, lines 22 through 24).

### 4. LICENSE AGREEMENT BETWEEN BMMI AND JIG

13. Following the agreed business arrangement, Zamoyski was aware and authorized Rogala to seek and secure licenses to utilize the images of certain celebrities, including Bob Marley. (Exhibit 7, Deposition Transcript Zamoyski at page 41, line 9; page 48, lines 16 through line 22; page 49 lines 12-13; page 97 lines 15 through 19; see also Complaint at ¶10).

14. Zamoyski admitted that the exploitation of Bob Marley's image could only occur by securing a license to use Marley's image from the parties that controlled his name and likeness rights. (Exhibit 7, Deposition Transcript Zamoyski at page 55, lines 2 through 7).

15. Zamoyski created the Bob Marley image Rasta Dreads which he in turn provided to Rogala for use by Rogala in approaching and attempting to secure a license for Bob Marley. (Exhibit 7, Deposition Transcript Zamoyski at page 53, line 1 through 8; page 54 line 3 through line 7; page 54 line 21 through page 55 line 1).

---

[2] The company has also been identified in paperwork with the name Jurek International Grapix. By agreement of counsel, it has been stipulated that the companies are one and the same.

5

16. Prior to entering into and executing a license agreement with BMMI, Jurek and Richard Rogala, Sr. traveled to the offices of BMMI in New York City and met with Stephanie Levine. (Exhibit 10, Deposition Transcript Richard Rogala, Sr. at Pg 20 Line 19 through Pg. 21 Line 5; Page 54 Line 18 through Page 55 Line 9).

17. At the meeting, Ms. Levine informed Rogala and Zamoyski that if they entered into a license agreement with BMMI, that they understood that any designs that were created would become the property of BMMI. (Exhibit 10, Deposition Transcript Richard Rogala, Sr. at Pg 20 Line 19 through Pg. 21 Line 5; Pg. 23 Lines 5-12; Pg. 25 Lines 4-13).

18. On or about June 15, 1995 JIG entered into a Licensing Agreement with BMMI relative to the use of the name, image, trademark and likeness of Bob Marley on certain licensed products. (Exhibit 11, June 15, 1995 License Agreement between JIG and BMMI).

19. Zamoyski was aware and approved JIG to enter into an agreement with BMMI. (Exhibit 7, Deposition Transcript Zamoyski at page 58, lines 10 through 17)

20. Article 4 of the License Agreement (Exhibit 11) provides in pertinent part:

> "(c) Licensee (JIG) shall furnish to Licensor (BMMI), at Licensee's cost, such artwork as may be reasonably necessary for the manufacture, advertising and promotion of the Product, subject to Licensor's absolute right of approval. **Such artwork shall embody photograph(s) of Artist supplied to Licensee by Licensor, at Licensee's expense.** All such artwork shall be and remain the property of Licensor, notwithstanding its creation or modification (which is also subject to Licensor's absolute approval) by Licensee, and shall be returned to Licensor after its use by Licensee. Licensee shall not use the artwork in any other manner. **Any and all additions to, and new renderings, modifications or embellishments of, the artwork shall, notwithstanding their invention, creation and use by Licensee, be and remain the property of Licensor, and Licensor may use, and license others to use, the same, subject only to the provisions of this Agreement."**
> **(Emphasis added)**

21. Under Article 8 (b) the License Agreement (Exhibit 11) provides:

6

Upon the termination or expiration of this Agreement, **Licensee will be deemed to have assigned, transferred and conveyed to Licensor any trade rights, equities, good will, title or other rights in and to the Artist which may have been created or obtained by Licensee or which may have vested in Licensee in pursuance of any endeavors covered hereby, and Licensee will execute any instruments requested by Licensor to accomplish or confirm the foregoing.** In the event Licensee has to execute any such instruments, within five (5) days after Licensor's request therefore, Licensor shall execute such instruments on behalf of Licensee. Every use of the Artist or any portion thereof by Licensee shall inure to the benefit of Licensor. Licensee shall not at any time acquire any rights in such Artist by virtue of any use it may make pursuant hereto. **(emphasis added)**

22. In addition, Paragraph 11 of the License Agreement (Exhibit 11) provided in pertinent part as follows:

    11. SOLE AND EXCLUSIVE OWNERSHIP

    Licensee (Jurek) acknowledges that the Licensor is the sole owner of all right, title and interest in and to the Artist,; **that any copyright and trademark right or any other rights which may be created in any article, label, design, or other material bearing or including the Artist, are and shall be the sole and exclusive property of Licensor; that Licensee has and will hereby acquire no rights in the Artist; that design or other material bearing or including the Artist, other than the right to use the same as herein provided, shall be the exclusive property of the Licensor;** and that at no time will Licensee, either during the Term of this Agreement or thereafter, claim any rights therein or register any word, device or symbol confusingly similar to the Artist or any similar or related mark or any other material bearing the Artist or any similar or related Mark, except pursuant to this Agreement. All use of the Artist by Licensee pursuant to this Agreement shall inure to the benefit of Licensor. In the event that if for any reason any such materials are deemed not (sic) be owned by Licensor, then all rights therein, including the worldwide copyright, shall be deemed and are hereby assigned to Licensor by this Agreement. (emphasis added)

23. In addition, Paragraph 13 of the License Agreement (Exhibit 11) provided in pertinent part:

    (a) In all cases where Licensee desired artwork involving the Product which is the subject of this Agreement to be prepared, the cost of such artwork and the time for the production thereof shall be borne by Licensee. All artwork and designs involving the Artist, or any reproduction thereof shall, notwithstanding their invention or use by Licensee, be and remain the property of Licensor, provided that Licensor shall not make

7

use of such designs or artwork accept as provided in Paragraph 11 above which shall be entitled to use the same and to license the use of same to others, expect on items hereunder during the Term of this Agreement.

(d) Licensee specifically agrees that should it obtain photographs, artwork, or other material bearing the Artist for use in creating the Product hereunder, it shall only use the same after obtaining from the photographer, artist or other creator thereof an assignment of all rights in favor of the Artist. Should Licensee commission the taking or creation of any photographs, artwork or other material bearing the Artist for use in creating the Product hereunder, Licensee agrees that same shall only be performed as a "work made for hire" commissioned by the Licensee under a "contract of service" pursuant to which Licensee shall be deemed the "author" and proprietor thereof; and Licensee shall promptly thereafter assign all rights in and to such photographs, artwork or other material to the Licensor.

24. The License Agreement (Exhibit 11) required that any designs created by a licensee first had to be submitted to BMMI for approval before any design could be sold. (Exhibit 11, paragraph 4(b)).

25. In accordance with the requirements of the License Agreement, Zamoyski testified that he would create a design depicting Bob Marley and would forward it to Stephanie Levine at BMMI for approval. (Exhibit 7, Deposition Transcript Zamoyski at page 63, line 21 through page 64 line 6).

26. Zamoyski admitted that BMMI had the final say as to what designs could be sold by JIG under its license with BMMI. (Exhibit 7, Zamoyski Deposition Transcript at page 57, lines 3 through 6).

27. Zamoyski expressly admitted at deposition that all three of the Items In Issue were submitted to BMMI as part of the approval process required by the License Agreement. (Exhibit 7, Deposition Transcript Zamoyski at page 64, line 16 through page 65 line 7).

28. Zamoyski further admitted that two of the Items In Issue were created specifically for exploitation by JIG under its license with BMMI. (Exhibit 7, Deposition Transcript Zamoyski at page 71, lines 3 through 6).

8

29. After creating Lion Zion, Zamoyski photographed it and submitted the photograph on paper containing identifying information and the business card for JIG along with a handwritten personal letter to Stephanie Levine indicating it was being submitted under the terms of the License Agreement approval procedures. (Exhibit 7, Deposition Transcript Zamoyski at page 89, line 20 through page 92 line 20; see also letter and photograph of Lion Zion design exhibit "12").

30. Zamoyski admits that the design Lion Zion was submitted by him directly to BMMI on behalf of JIG pursuant to the License Agreement. (Exhibit 7, Deposition Transcript Zamoyski at page 94, line 7 through 9).

31. Zamoyski admits that the design Kaya Man was likewise submitted by him directly to BMMI on behalf of JIG pursuant to the License Agreement. (Exhibit 7, Deposition Transcript Zamoyski at page 96, lines 86 through 20; See also handwritten letter to BMMI Exhibit "13").

32. Zamoyski admitted that he received and was paid monies by JIG related to its sales of Bob Marley items. (Exhibit 7, Deposition Transcript Zamoyski at page 83, lines 19 through 22; page 97 line 20 through page 98 line 10).

33. Zamoyski admitted he was aware that the license between JIG and BMMI ended in 1999. (Exhibit 7, Deposition Transcript Zamoyski at page 100, lines 5 through 20).

34. The Marley Parties understood and relied upon the fact that the License Agreement was entered into between Jurek and Jurek International Graphics and that Jurek was actively involved in the parties' dealings under the License Agreement. (Deposition Transcript of Doreen Crujeiras, Exhibit 14, at pages 21, 22 and 25).

9

### 5. STATUTE OF LIMITATIONS & LACHES

35. Zamoyski admitted at deposition that in September of 2003 he became personally aware that the Items In Issue were being manufactured, printed and sold by Zion. (See Plaintiff's Answers to Interrogatories, Exhibit "15" Interrogatory Answer No. 13; Exhibit 7, Deposition Transcript Zamoyski at page 115, lines 10 through 16).

36. Zamoyski admitted that he reviewed and was provided with a report prepared by the printer formerly used by JIG, New Buffalo T-shirt Factory, which detailed that New Buffalo was printing the Items In Issue on behalf of Zion. (See New Buffalo T-shirt Computer Printout Exhibit 16"; Exhibit 7, Deposition Transcript Zamoyski at page 118, line 6 through 11).

37. Upon learning that the Items In Issue were being manufactured, printed and sold in September 2003, the Plaintiff admitted that he did not file suit against any of the Defendants in 2003 (Exhibit 7, Deposition Transcript Zamoyski at page 115, lines 22 through 24; page 117 lines 9 through 11); even though he could have filed suit against the Defendants in 2003 (Exhibit 7, Deposition Transcript Zamoyski at page 117, lines 12 through 17); and that he did not contact anyone at Zion, BMMI or Hope Road about the fact that they were engaging in the printing, manufacture and sale of items depicting the Items In Issue (Exhibit 7, Deposition Transcript Zamoyski at page116, lines 1 through 6, page 117, lines 3 through 8).

38. Zamoyski further admits he became aware in 2003 that the Items In Issue were further being used on sweatshirts, stickers, buttons, key chains, lighters and tapestries. (See Plaintiff's Answers to Interrogatories, Exhibit "15" Interrogatory Answer No. 13; Exhibit 7, Deposition Transcript Zamoyski at page 116, line 11 through page 117, line 2).

39. Tellingly, the Plaintiff directed correspondence to his business partner Richard Rogala, Sr. in October of 2003 where Plaintiff stated: "We cannot go after the Marley family and their printer as it will kill the purpose of the design and then will cease to be marketed." (Exhibit 7, Deposition Transcript Zamoyski at page 120, lines 2 through 16; Letter from Zamoyski to Rogala, Exhibit "17.")

40. When questioned, the Plaintiff failed to provide any explanation or justification as to why he waited nearly five years after he first discovered the Defendants alleged acts of infringement. (Exhibit 7, Deposition Transcript Zamoyski at page 115 lines 17 through 21).

41. Plaintiff testified that he only filed his copyright registrations in 2004 as the result of discovering that the Defendants were exploiting the designs. (Exhibit 7, Deposition Transcript of Zamoyski at page 32 lines 13 through 19).

42. Zamoyski further testified that he retained a law firm in 2005 and had the law firm prepare and send a letter dated February 16, 2005, to Zion claiming that he owned the copyrights to the Items In Issue and that Zion was infringing upon the Items In Issue and demanding that Zion cease such activity. (Exhibit 7, Deposition Transcript Zamoyski at page 121 line 21 through page 123, line 5; See Letter Exhibit 18).

43. Zamoyski admitted that Zion immediately responded to his attorneys' letter in a written response dated February 23, 2005 which response expressly repudiated plaintiff's claimed ownership to the copyrights in the items in issue. (Exhibit 7, Deposition Transcript Zamoyski at page 123, line 18 through page 125, line 7, See Response Letter Exhibit "19").

44. Zamoyski further testified that after seeing and reviewing the response, he did not have

his attorneys prepare and provide a response to Zion's letter of February 23, 2005. (Exhibit 7, Deposition Transcript Zamoyski at page 126, lines 10 through 14).

45. When questioned what happened after receiving the response letter, the Plaintiff failed to provide any explanation or justification as to why he waited nearly five years after he first discovered the Defendants alleged acts of infringement., but cavalierly stated in response to questioning: "Nothing happened. I went to Europe, came back and there was- -Nothing happened basically." (Exhibit 7, Deposition Transcript Zamoyski at page 123, lines 8 through 11).

46. Zamoyski does not dispute that his complaint in this matter was filed more than three years after his attorneys wrote to Zion in February of 2005 and almost five (5) years after he first learned that the Defendants were manufacturing and selling items depicting the Items In Issue. (Exhibit 7, Deposition Transcript Zamoyski at page 126, line 15 through page 127, line 3).

47. Plaintiff was pointedly asked: "And what, if anything did you do as a result of learning that in September of 2003 [the defendants were selling your alleged copyrighted designs] with regard to any of the Defendants in this case?  Answer: I haven't done anything. I was unable to do anything." (Exhibit 7, Deposition Transcript Zamoyski at page 115 lines 17 through 21).

## III.  ARGUMENT

### A.  The Standard of Review for a Motion for Summary Judgment

As the moving party, the Defendants have the burden of proving to the Court that summary judgment is warranted in this case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Summary judgment should be granted when the moving party demonstrates there are no

genuine issues of material fact and, therefore, the moving party is entitled to judgment as a matter of law. Celotex Corp. 477 U.S. at 322. The First Circuit has noted: "We can affirm the entry of summary judgment only if the record discloses no genuine issue of material fact and shows with certitude that the movant is entitled to judgment as a matter of law." Warren Freedenfeld Associates, Inc., v. McTigue, et al., 531 F.3d 38, 44 (1st Cir. 2008); citing Havlik v. Johnson & Wales Univ., 509 F.3d 25, 29 (1st Cir. 2007); T-Peg, Inc. v. Vermont Timber Works, Inc., 459 F.3d 97 (1st Cir. 2006). The Defendants meet this burden, and accordingly, summary judgment should be entered.

**B.     Plaintiff's Claims Are Barred by the Applicable Statute of Limitations Because He Failed to Bring Suit Within Three Years of the Repudiation of His Claimed Ownership of the Copyrights In and To the Items In Issue**

The Plaintiff has predicated his claim for infringement on the Copyright Act, 17 U.S.C. §101 and §501 claiming to be the author and therefore the rightful holder of the copyrights to the Items In Issue. (See Exhibit "1" Complaint). However, in order to maintain a copyright infringement claim, the plaintiff must first demonstrate: 1) ownership of a valid copyright; and 2) a duplication of the original protected work. Feist Publishing, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991); Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 548 (1985). A predicate to any claim of infringement is establishment of ownership of a copyright. Cambridge Literary Props. v. W. Goebel Porzellanfabrok G.m.b.H & Co., 510 F.3d 77 (1st Cir. 2007). Normally, in cases involving challenges to copyright ownership, "plaintiffs usually raise this threshold issue by seeking a declaratory judgment." Cambridge, 510 F.3d at 85; (citing Santa-Rosa v. Combo Records, 471 F.3d 224, 227 (1st Cir. 2006).[3] Thus, the appropriate inquiry

---

[3] The Plaintiff did not include a claim for declaratory judgment in his complaint. However, this is immaterial to this Court's consideration of the application of the statute of limitations as copyright ownership is a necessary predicate to any claim for infringement. See, Cambridge, Id. wherein court determined that plaintiff had failed to establish ownership of copyright even where plaintiff had not sought a declaratory judgment.

13

for this court is not whether the Defendants have engaged in acts of infringement, but rather whether Plaintiff's claim of ownership in and to the copyrights to the Items In Issue is barred by his failure to assert and establish any ownership of the copyrights within three years of learning that ownership was repudiated. Cambridge, 510 F.3d. at 86; Santa Rosa, 471 F.3d at 228.

1. **Claims of Copyright Ownership Are Subject To the Copyright Act's Three Year Statute of Limitations**

17 U.S.C. §507(b) clearly stipulates that: "no civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim *accrued*." (emphasis added). "A claim accrues when a plaintiff 'knows or has reason to know of the act which is the basis for the claim." Cambridge, 510 F.3d. at 88; (quoting Santa-Rosa, 471 F.3d at 227); Bruce v. Worldwide News, Inc., 310 F. 3d 25, 27 n.1 (1st Cir. 2002). "Unlike claims for copyright infringement, which accrue when the plaintiff has knowledge of the infringement or is chargeable with such knowledge, **claims for declaration of ownership under the Copyright Act accrue when the plaintiff learns, or should as a reasonable person have learned, that the defendant repudiated the plaintiff's ownership of the copyright.**" Baco v. TMTV Corp., 436 F.Supp.2d 311 (D. Puerto Rico 2006); Gaiman v. McFarlane, 360 F.3d 644, 653 (7th Cir. 2004). (emphasis added). As the First Circuit has held: " . . . a claim for declaratory judgment of ownership *accrues* when the plaintiff 'knew of the alleged grounds for the [ownership] claim." Santa-Rosa, 471 F.3d at 227; (quoting Margo v. Weiss, 213 F.3d 55, 60-61 (2d Cir. 1996)); Cambridge, 510 F.3d. at 85 (ownership of copyright claims are governed by Copyright Act and the Act's three year statute of limitations applies).

Here, the Plaintiff became aware in September 2003, or at the very latest, in February of 2005 that the Defendants repudiated his claimed ownership of copyrights in and to the Items In Issue. (Statement of Undisputed Material Facts at paragraphs 36 through 43). Accordingly, the

14