UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JÜREK ZAMOYSKI )
a/k/a JERZY BEROWSKI, )
          Plaintiff )
)
)
       v. )   Civil Action No. 08-30125-KPN
)
)
FIFTY-SIX HOPE ROAD MUSIC )
LIMITED, INC., et al., )
          Defendants )


MEMORANDUM AND ORDER WITH REGARD TO
PLAINTIFFS-IN-COUNTERCLAIM'S MOTION FOR AWARD
OF ATTORNEY'S FEES (Document No. 87)
February 4, 2011

NEIMAN, U.S.M.J.

Pursuant to section 505 of the Copyright Act, 17 U.S.C. § 505, Fifty Six Hope Road Music, Ltd., Zion Rootswear, LLC, and Bob Marley Music, Inc. ("Marley Parties"), as Plaintiffs-in-Counterclaim, seek fees and costs post-trial from Jürek Zamoyski ("Zamoyski"), as Defendant-in-Counterclaim. Zamoyski has not only opposed the Marley Parties' motion but, in turn, has requested the opportunity to submit his own motion for fees should the court allow his motion for judgment notwithstanding the verdict with regard to the Marley Parties' breach of contract claim. Given the fact that the court has denied Zamoyski's post-verdict motion, the court need only address the propriety of awarding the Marley Parties the fees and costs they request. For the reasons which follow, the court will allow the Marley Parties' motion, but in part only.

## I. BACKGROUND

In light of the parties' familiarity with the matter, little by way of background is necessary. Suffice it to say, Zamoyski commenced the instant action for copyright infringement in June of 2008 with regard to designs created by him known as "Rasta Dreads," "Lion Zion," and "Kaya Man" (the "Items in Issue"). In response, the Marley Parties asserted counterclaims seeking, in part, a judgment declaring them owners of the copyrights. On June 2, 2010, granting in part the Marley Parties' motion for summary judgment, the court dismissed Zamoyski's claim for copyright infringement as untimely. The case thereafter proceeded to trial in November of 2010 on the Marley Parties' counterclaims for declaratory judgment, breach of contract and violation of Mass. Gen. L. ch. 93A. The parties agreed at the time that the jury's factual findings would determine the Marley Parties' counterclaim for declaratory judgment of copyright ownership, which had otherwise been reserved to the court.

The jury's affirmative answer to the first question on the special verdict form -- which asked if the Marley Parties had proven by a preponderance of the evidence that Richard Rogala was Zamoyksi's agent by actual authority when he signed the 1995 License Agreement which transferred ownership of the copyrights in the Items in Issue to the Marly Parties -- did in fact result in the entry of a declaratory judgment in favor of the Marley Parties for copyright ownership. The jury's other answers to questions on the special verdict form resulted in a judgment in the Marley Parties' favor on their breach of contract counterclaim but awarded no damages. The court itself issued judgment in Zamoyski's favor on the Marley Parties' chapter 93A counterclaim.

2

In light of the ensuing judgment, the Marley Parties assert that they were prevailing parties not only with regard to Zamoyski's copyright infringement claim but, as well, on their counterclaim seeking a declaration of copyright ownership. As a result, they seek $157,150 in fees, less a courtesy discount provided in the amount of $2,800, plus $5,878.30 in costs, bringing the total amount sought to $160,228.30.

In opposition, Zamoyski raises a number of arguments, some creative, why no fees ought to be awarded the Marley Parties. If the court is nonetheless inclined to award fees and costs, Zamoyski continues, then the requested amounts should be reduced; in particular, Zamoyski asserts that the Marley Parties ought not be awarded fees for services performed on non-copyright claims. The court notes, however, that Zamoysk does not otherwise challenge the number of hours expended by the Marley Parties' attorneys or contest the hourly rates utilized by them.

## II. S<span>TANDARDS</span>

In full, section 505 of the Copyright Act provides as follows:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. This fee-shifting provision is to be applied in an "evenhanded manner" whether the prevailing party was aligned as the plaintiff or the defendant. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 525 n.12, 534 (1994). In exercising its discretion, a court is to consider such relevant but non-determinative factors as

"frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 534 n.19. *See also Lotus Dev. Corp. v. Borland Int'l Inc.*, 140 F.3d 70, 73-74 (1st Cir. 1998).

### III. DISCUSSION

As an initial matter, the Marley Parties argue that they are entitled to fees because they prevailed in defeating Zamoyski's claim of copyright infringement. *See InvesSys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16, 20 (1st Cir. 2004) ("[I]n section 505 Congress aimed to provide a potential incentive to the winner who asserts a successful copyright claim or defends against an unworthy one."); *Cf. Fogerty,* 510 U.S. at 527 ("[D]efendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement."). Indeed, the Marley Parties argue that, because they were not entitled to any damages on their successful defense, "the presumption in favor of awarding fees is very strong," for "without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from enforcing [its] rights." *Assessment Techs. of Wi, LLC v. Wire Data, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004). The Marley Parties also assert that they prevailed in a second way, namely, when the court declared them owners of the copyrights at issue. *See Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.*, 161 F.2d 406, 410 (2d Cir. 1946) ("As the action arose under the Copyright Act an allowance of attorneys' fees was permissible . . . despite the fact that a declaratory judgment was sought.") (citing

4

*Yardley v. Houghton Mifflin Co.*, 25 F. Supp. 361, 364 (D.N.Y. 1938), *aff'd*, 108 F.2d 28 (2d Cir. 1939)).

Zamoyski's counter-arguments are several and, oftentimes, conflated. Aside from asserting that his claims and defenses were reasonable and pursued in good faith, assertions which are addressed below, Zamoyski maintains, somewhat more pointedly, that fees are available under section 505 only when the claim is for infringement and registration requirements are met. *See also* 17 U.S.C. § 412(2) ("[N]o award of statutory damages or of attorney's fees, as provided by section[] . . . 505, shall be made for any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."). Since the Marley Parties never registered copyrights for the Items in Issue, Zamoyski argues, there is simply no basis for an award of fees in this matter.

This argument, of course, ignores the obvious import of section 505 that fees and costs "by or against any party" can be awarded in the court's discretion to a prevailing party in "any civil action under this title." 17 U.S.C. § 505. Moreover, as the case law cited above makes clear, section 505 applies to the defense of a copyright infringement action, as occurred here. Thus, at a minimum, the Marley Parties are free to seek fees for their successful defense of Zamoyski's copyright infringement claim.

Zamoyski also asserts, in a footnote, that fees under the Copyright Act are not available to a prevailing party in an action seeking declaration of copyright ownership, as reflected in the Marley Parties' counterclaim. In essence, Zamoyski argues that the

5

cases upon which the Marley Parties rely, including *Shapiro*, derive from what he labels an "ambiguous 1938 decision" where a prevailing defendant was awarded "only a single attorneys fee which will cover the dismissal of the complaint [for infringement] and the judgment for the defendant on the counter-claim [for declaration of ownership]." *Yardley*, 25 F. Supp. at 365. There is no indication, Zamoyski continues, that fees were awarded in *Yardley* specifically for the declarative counterclaim. *See Yardley*, 108 F.2d at 30 (concluding broadly that "[t]here was no error in awarding judgment on the counterclaim"). In contrast, Zamoyski asserts, the instant case concerned decisions on a copyright claim and an ownership counterclaim that were reached at separate times.

This argument, too, is unpersuasive. First, the *Yardley* language quoted by Zamoyski hardly amounts to a considered intention by that court to draw a hard and fast line between the two claims before it. Second, his argument ignores the fact that his claim for copyright infringement not only engendered the Marley Parties' ownership counterclaim but was intertwined with that claim; the temporal gap between the court's summary judgment ruling dismissing Zamoyski's copyright infringement claim and its later declaration of ownership by the Marley Parties is meaningless.

Third, Zamoyski's argument ignores the guidance provided by the First Circuit in *InvesSys, Inc*. Since Section 505 was "drafted with claims under the Copyright Act in mind," the First Circuit explained, Congress did not "expressly address the problem of a case with a mix of claims." *Id.*, 369 F.3d at 19. "However," the First Circuit continued, "here a federal copyright claim was asserted in the complaint, so this is literally a 'civil

6

action under this title [The Copyright Act],' 17 U.S.C. § 505." *Id.* The same is true here. More importantly for present purposes, the First Circuit went on to explain that, given the uncertainty of 505's scope, "the case law has used common sense to carry out Congress' underlying intent to provide for attorney's fees in copyright enforcement *or like matters* but not for other civil claims that do not involve copyright." *Id.* (citing *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1230-31 (9th Cir. 1997)) (emphasis added). Here, there is no question that the Marley Parties' counterclaim seeking a declaration of copyright ownership, even though not invoking the Copyright Act itself, is a "like matter" for which section 505 fees are available. In short, Zamoyski's argument, which attempts to create an unbridgeable moat around his copyright claim, is a "cramped" reading of section 505. *Id.* at 20. *See also Rose v. Bourne, Inc.*, 176 F. Supp. 605, 607 (D.N.Y. 1959), *aff'd*, 279 F.2d 79 (2d Cir. 1960) (awarding fees in defendant's counterclaim for declaration of ownership, the copyright infringement claim having been dismissed prior to trial); *R.C. Entm't, Inc. v. Rodriquest & RCR Music Publ'g, Inc.*, 1999 WL 777903 at *3 (S.D.N.Y. Sept. 24, 1993) (awarding fees in suit for declaration of ownership when no infringement claims asserted).[1]

All this aside, Zamoyski maintains, with reference to the discretionary factors set

---

[1] It should be noted that the court is not at all disposed towards awarding fees which may be available under the contract itself, despite the jury's finding that the contract was violated by Zamoyski. The Marley Parties did not present evidence to the jury of specific monetary damages or attorneys' fees expended by them. Their present assumption that attorneys' fees under the contract claim were reserved to the court was not the court's understanding, in contrast to claims for attorney's fees under the Copyright Act or, for that matter, the chapter 93A claim which was reserved to the court as well.

out in *Fogerty*, (1) that his claim of copyright infringement was brought in good faith, *i.e.*, not frivolous, (2) that his claim was objectively reasonable, *i.e.*, pursued to resolve close or unsettled questions of law and fact, and (3) that there is no need to advance considerations of compensation or deterence. In essence, Zamoyski urges the court to consider what he knew when he made and pressed his claim, not merely the unfavorable outcome. *See InvesSys*, 369 F.3d at 21.

In response, the Marley Parties argue that, given the unequivocal statute of limitations rulings in *Cambridge Literary Props. Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.*, 510 F.3d 77 (1st Cir. 2007) and *Santa-Rosa v. Combo Records*, 471 F.3d 224 (1st Cir. 2006) -- upon which this court relied when awarding summary judgment -- Zamoyski's copyright infringement claim was "objectively weak," *InvesSys.*, 369 F.3d at 20-21, making the award of fees all the more reasonable. Further, they assert that, after the jury took a closer look at the circumstances, it found that Zamoyski transferred ownership of the copyrights to the Items in Issue in 1995, thereby supporting the conclusion that the timeliness of his claims was "dubious" from the outset. *Id.* at 21. Accordingly, the Marley Parties argue, Zamoyski's copyright infringement claim was not only deficient in the legal sense, *i.e.*, the statue of limitations, but factually as well since the jury, in effect, determined that he disposed of the copyrights some thirteen years prior to commencing suit.

In the court's view, Zamoyski has the better argument with regard to the frivolousness factor set out in *Fogerty*. Indeed, the only counterclaim on which Zamoyski was successful at summary judgment was the Marley Parties' assertion,

pursuant to Mass. Gen. L. ch. 231, § 6F, that he had brought a "frivolous" or "bad faith" lawsuit, a claim they agreed to drop.

The Marley Parties, however, have the better argument with regard to the more significant question of objective unreasonableness. *See Yankee Candle Co. v. Bridgewater Candle Co.*, 140 F. Supp. 2d 111, 115 (D. Mass. 2001) (noting that "[t]he First Circuit has accorded the factor of 'objective unreasonableness' substantial weight in the determination of whether to award attorneys' fees") (citing *Lotus Dev. Corp.*, 140 F.3d at 74). In short, Zamoyski's various assertions regarding the statute of limitations do not obviate the fact that his delay in pursuing his copyright infringement claim was of his own making. After all, he had been placed on notice of the purported infringement as early as September of 2003 and as late as February 23, 2005, but nonetheless delayed more than three years before commencing suit. Moreover, he testified at trial that he never even read the 1995 contract entered into by his agent Rogala, later determined by the jury to have had Zamoyski's actual authority, a contract which makes clear beyond doubt that ownership of the copyrights was to reside with the Marley Parties.

Simply put, it was not objectively reasonable for Zamoyski to believe that he could overcome the significant barriers which he would no doubt face when confronted with a statute of limitations defense. Thus, however well motivated Zamoyski may have been, his lawsuit needed to be timely and was not. Accordingly, at summary judgment, the court dismissed Zamoyski's copyright claim, as well as his claim for unjust enrichment which he conceded at the time was preempted by the Copyright Act.

Having no further claims to pursue and having failed to defeat most of the Marley Parties' counterclaims via a cross-motion for summary judgment, Zamoyski found himself in the unenviable position of defending himself at trial on their counterclaims for declaratory relief (concerning the ownership of the copyrights), breach of contract, and chapter 93A.

Still, Zamoyski asserts that at least one argument in defense of the Marley Parties' counterclaims -- regarding the term "duly authorized agent" as used in 17 U.S.C. § 204 -- was objectively reasonable and, if successful, could have overcome the statute of limitation's defense. However, as he recognized at the time, Zamoyski's argument, albeit creative, was not particularly well-supported. Accordingly, the most important factor, Zamoyski's objective unreasonableness, *see Yankee Candle*, 140 F. Supp. 2d at 115, leans heavily in favor of awarding the Marley Parties a good part of the fees and costs they seek. In the end, the verdict confirmed what the Marley Parties believed all along, that the copyrights had been rightfully transferred to them over a decade prior to Zamoyski's initiation of the action. Having been thrust by him into litigation, it would simply be unfair to deny *all* their fees and costs, as Zamoyski wishes.

As for the third factor -- "the need in particular circumstances to advance considerations of compensation and deterence," *Fogerty*, 510 U.S. at 534 n.19 -- Zamoyski argues that the court should deny the Marley Parties' requested fee because it would saddle him with a crippling debt that, in any event, would be uncollectible. The court is aware that the relative financial strength of parties has been considered by some courts. *See, e.g., Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 234 (4th Cir.

1993) ("the court may find relevant, among other circumstances, the ability of the non-prevailing party to fund an award"); *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 546 F. Supp. 2d 120, 132 (S.D.N.Y. 2008) (similar, but finding that non-prevailing party had not adequately supported its claim of financial hardship); *Brown v. Perdue*, 2006 WL 2679936, at *7 (S.D.N.Y. Sept. 15, 2006) (same). The court also recognizes that Zamoyski's earnings of late have been insignificant, as reflected in his proffered 2008 and 2009 tax returns. Zamoyski's argument, however, raises the troubling notion that his present indigency should excuse him from the consequences of his lawsuit, particularly when his hope for vindication did not adequately take into account the risk that he might not succeed, the significant costs which the Marley Parties themselves would incur in defending their rights, or the fact that fees could be awarded against him. Nor does Zamoyski's argument adequately take into account his future ability to pay. Nonetheless, it is true, as Zamoyski appears to argue as well, that he needs little additional deterence from invoking claims of copyright ownership of the Items in Issue.

The last argument which Zamoyski pursues -- that the Marley Parties ought not receive fees for matters upon which they did not prevail or for matters unrelated to the countervailing copyright claims -- has some resonance with the court. To be sure, the precise apportionment of fees between copyright-related claims and other claims is oftentimes difficult when the litigation issues are common to both, as was true here. *See InvesSys*, 369 F.3d at 244. Unfortunately, Zamoyski has not expended any effort parsing the records provided by the Marley Parties' attorneys to at least suggest a way

to accomplish such an apportionment.  Still, more broadly speaking, it is clear that the Marley Parties did not prevail on their state law counterclaims under Mass. Gen. L. ch. 231, § 6F and ch. 93A, and, although they did prevail on their contract counterclaim, they were not awarded any damages thereon.

Given this background and analysis, the court believes that the discretionary factors militate against granting the Marley Parties all the fees they seek.  Accordingly, for the reasons which follow, the court will reduce their fee request by a total of forty-five percent.  *See Yankee Candle*, 140 F. Supp. 2d at 124-25 (reducing total award by various ten percent increments due to weaknesses in prevailing party's proof); *Scott-Blanton v. Univ. City Studios Prods. LLLP*, 593 F. Supp. 2d 171, 177 (D.D.C. 2009) (reducing fees based on the number of claims justifying an award); *InvesSys,Inc.*, 369 F.3d at 19 (recommending a "common sense" approach to awarding fees).

First, the court will reduce the Marley Parties' fee request by ten percent to account for the fact that, while objectively unreasonable, Zamoyski's position was not frivolous, as evidenced by the Marley Parties' agreement to drop their claim of frivolousness brought pursuant to Mass. Gen. L. ch. 231, § 6F.  *See Yankee Candle*, 140 F. Supp. 2d at 115-16 ("An unreasonable claim need not be frivolous to be compensable, nor does a finding of unreasonableness imply culpability on the part of the losing party, as with Fed. R. Civ. P. 11.") (citing *Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir. 1998)).  Second, the court will reduce the Marley Parties' fee request by another ten percent since, in the court's estimation, Zamoyski needs little deterence from violating their copyrights in the Items in Issue.  Finally, the court will reduce the

12

Marley Parties' fee request by an additional twenty-five percent to account for a fair apportionment of copyright vs. non-copyright claims as well as successful vs. unsuccessful claims, as described above. *See Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996) (affirming reduction of ten percent to account for hours dedication to non-copyright portion of the case). *See also Fabi Constr. Co. v. Sec'y of Labor*, 541 F.3d 407, 413-14 (D.C. Cir. 2008) (reducing the amount of attorney's fees awarded based on the number of claims justifying an award); *Scott-Blanton*, 593 F. Supp. 2d at 177 (similar). This approach, in the court's view, best reflects the balance which the discretionary factors call for and, as well, applies section 505 in an even-handed manner.

## IV. CONCLUSION

For the reasons stated, the court hereby awards the Marley Parties $84,892.50 in attorney's fees ($157,150 less the courtesy discount of $2,800 less forty-five percent) plus $5,878.30 in costs, for a total award of $90,770.80.

IT IS SO ORDERED.

DATED: February 4, 2011

                                                  /s/ Kenneth P. Neiman
                                                KENNETH P. NEIMAN
                                                U.S. Magistrate Judge